IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| FREDDIE BROOKS, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 3:06-CV-1566-D |
| | § | |
| YELLOW TRANSPORTATION, INC. | § | |
| C/O THE FRICK CO., | § | |
| | § | |
| Defendant. | § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION

By order of reference dated April 29, 2011, this case has been referred for pretrial management, including the determination of non-dispositive motions and issuance of findings of fact and recommendations on dispositive motions. Before the Court for recommendation is *Defendant Yellow Transportation, Inc.'s Motion for Summary Judgment*, filed August 15, 2012 (doc. 119). Also before the Court are the related motions, *Defendant Yellow Transportation, Inc.'s Objections and Motion to Strike Plaintiffs' Summary Judgment Evidence*, filed October 3, 2012 (doc. 130), and *Plaintiffs' Motion for Leave to File a Sur-reply Brief Regarding Defendant's Motion for Summary Judgment and Brief*, filed October 10, 2012 (doc. 134). Based on the relevant filings and applicable law, the motion for summary judgment should be **GRANTED in part and DENIED in part**. The related motions to strike and for leave to file a sur-reply are **DENIED**.

## I. BACKGROUND

Plaintiffs Freddie Brooks, Charles Denson, Charles Dotson, Kenneth Freeman, Randal Jones, Kevin Levingston, Mark Nelson, Larry Reese, Donnell Smith, James Spears, George Williams and Willie Wilson (collectively Plaintiffs) sue their current and/or former employer, Defendant Yellow Transportation, Inc. (Defendant), for race discrimination in violation of 42 U.S.C. § 1981. (*See* doc.

111.).[1]  All Plaintiffs allege they were subjected to a hostile work environment, and Plaintiff George Williams (Williams) alleges disparate treatment based on Defendant's failure to extend an offer of full-time employment.  They seek monetary damages as well as declaratory and injunctive relief. (*Id*. at 10-11.)[2]

Plaintiffs worked at Defendant's freight terminals in the Dallas/Fort Worth area between the 1970s and the present.  (Docs. 120 at 13; 126-1 at 32; 126-8 at 5-6.)  All Plaintiffs worked at Terminal 509 at some point during the relevant time period, and after it closed, they moved to positions at Terminals 508, 511 and 525.  (Docs. 120 at 11; 121-37 at 1.)  They held several different positions–checker, docker, hostler, shuttle driver, city driver and over-the-road driver.  (Docs. 120 at 21, 26, 28, 32, 34, 38, 40, 42, 44, 52;126-10 at 17.)

Unlike other Plaintiffs who were classified as "regular" employees, Williams worked for Defendant as a casual employee[3] between 1996 and 2001.  (Docs. 120 at 48, 50-51; 126-11 at 6.) Although he wanted to become a regular employee, he remained a casual worker throughout that tenure.  (Docs. 120 at 49; 126-11 at 6, 18.)  Williams worked at Defendant's freight terminal 50 days or so during 2001 due to lack of available work and eventually sought other employment.  (Docs. 120 at 49; 126-6 at 14, 18.)  He applied again in June 2006 and was hired as a casual laborer, working in that capacity from July 2006 to 2008.  (Docs. 120 at 50; 126-11 at 6, 9.)  During that

---

[1]  All Plaintiffs, with the exception of Randal Jones (Jones), are African-American.  Jones is Caucasian. (Doc. 111 at 2-3.)

[2]  Citations refer to the cm/ecf system page number at the top of each page rather than the page numbers at the bottom of each filing.

[3]  A casual employee works only as needed and does not receive benefits such as health insurance, vacation pay or pension benefits.  (Docs. 120 at 48-49; 121-33 at 8-9; 126-1 at 24.)  Casual employees are also not entitled to seniority benefits.  (Doc. 121-33 at 8.)

time, he trained as a driver so he could qualify for a position as a regular dockworker and made the list of qualified drivers.  (Doc. 126-11 at 36, 38, 44-46.)  When there was an opening for a dockworker/city driver, Defendant did not hire Williams and selected a white worker, Luther (last name unknown (LNU)) for the job.  (*Id.* at 35-38.)  Williams continued to work for Defendant as a casual employee until financial difficulties forced Defendant to cut back its labor force in 2008. (Docs. 120 at 50-51; 121-33 at 11; 121-37 at 3.)  Williams was not terminated; Defendant just did not call him in to work.  (*Id.*)

While employed by Defendant, Plaintiffs belonged to Local 745, the local teamsters union. (Docs. 120 at 14; 121-37 at 2; 126-3 at 8; 126-8 at 6.)  During the 1990's, a number of African-American union members (including some Plaintiffs) formed a group known as the Teamsters National Black Caucus Texas (TNBCT).  (Docs. 120 at 14; 121-27 at 4-6; 126-1 at 25; 126-3 at 9; 126-10 at 59-62, 66, 73.) Many union members who worked with Plaintiffs disapproved of TNBCT. (Docs. 120 at 15; 121-28 at 8-10.)  Others were part of a "clique" that embraced activities called the "Program."  (Docs. 120 at 16; 126-6 at 36.)  Under the Program, workers participated in organized slow downs designed to communicate employee sentiment regarding Defendant's workplace policies or disciplinary action against individual employees.  (*Id.*)  The Program also entailed punching the time clock on behalf of other workers and providing financial support to various causes.  (Docs. 120 at 16; 121-27 at 15; 126-6 at 35-36; 126-9 at 23; 126-12 at 17.)  Clique members who followed the Program exerted pressure on union members who did not conform to the Program, including Plaintiffs.  (Docs. 120 at 16; 126-6 at 52-42; 126-7 at 25-26.)

Over the course of their employment with Defendant, Plaintiffs were subjected to nooses

strung in doorways, window ledges and on equipment,[4] vandalism of personal property,[5] physical assault and/or intimidation,[6] verbal insults[7] and graffiti (writings and illustrations).[8]  The conduct began occurring during the 1970s and continued to occur after the filing of this case.  (Doc. 126-1 at 4, 32; 126-8 at 11, 14; 126-10 at 63.)  Plaintiffs testified about the nature of the conduct and the impact it had on them over the years of their employment.  (Docs. 126-2 at 13, 47; 126-3 at 25-26, 40, 49, 51; 126-7 at 38; 126-11 at 108; 126-9 at 36-38; 126-10 at 80; 126-12 at 41-43.)  Comments by co-workers and supervisors included "Look at those n[*****] sitting over there . . .;" "N[****];" "I could solve the problem in south Dallas by dropping a bomb;" "I shouldn't have trusted you people;" "N[****] parking in the supervisor parking;" "N[****] lover;" "F[***] n[*****];" "Get a rope;" "N[*****] don't have any rights;" "Here comes that n[****];" "Look

---

[4]  Plaintiffs who testified regarding nooses in the workplace included Brooks (docs. 121-1 at 11; 121-2 at 37-38, 42; 121-4 at 33; 126-1 at 5, 27-30, 33), Denson (doc. 126-2 at 13, 15, 27-32, 38-40), Dotson (doc. 126-3 at 46, 48-49, 53-57), Jones (doc. 126-5 at 43, 51), Levingston (doc. 126-6 at 27, 40-46), Nelson (doc. 126-7 at 30, 32), Reese (doc. 126-8 at 21, 24-29), Smith (doc. 126-9 at 27-30, 39-40), Spears (doc. 126-10 at 54, 56-58, 64, 74-76), Williams (doc. 126-11 at 108-111), Wilson (doc. 126-12 at 11, 30-38)

[5]  Plaintiffs who testified about vandalism were Brooks (docs. 121-1 at 26; 121-3 at 9, 46-47), Jones (doc. 126-5 at 17-22, 24-29), Levingston (doc. 126-6 at 55), Smith (doc. 126-9 at 21-22), Spears (doc. 126-10 at 45), Wilson (doc. 126-12 at 9-10, 15-16).

[6]  Plaintiffs who testified about physical assault and/or intimidation included Brooks (docs. 121-3 at 12-14, 49; 121-4 at 22, 25-27; 141-4 at 23), Denson (doc. 126-2 at 16,26, 44-46), Dotson (doc. 126-3 at 9-12, 39-40, 42-45, 52), Freeman (doc. 126-4 at 23-24), Jones (doc. 126-5 at 23, 24, 34-38, 42, 47, 59), Levingston (doc. 126-6 at 6, 35, 51-52), Nelson (doc. 126-7 at 10, 12, 24-25), Spears (doc. 126-10 at 26), Wilson (doc. 126-12 at 39-40).

[7]  Plaintiffs who testified about racial slurs and insults were Denson (doc. 126-2 at 13, 15, 40), Dotson (doc. 126-3 at 9, 11, 25-28, 60), Freeman (doc. 126-4 at 14-18, 28-29, 40-41, 44-45), Jones (doc. 126-5 at 39, 53, 56, 65), Levingston (doc. 126-6 at 11-14), Reese (doc. 126-8 at 8-11, 13-14), Smith (doc. 126-9 at 24-25), Spears (doc. 126-10 at 14, 18, 60-61, 71-72), Williams (doc. 126-11 at 79).

[8]  Plaintiffs who testified about graffiti in the workplace were Brooks (docs. 121-1 at 37; 121-2 at 37, 42), Dotson (doc. 126-3 at 27-33, 46-47, 49, 57), Freeman (doc. 126-4 at 11-13, 38, 41-42), Jones (doc. 32, 47-49, 52), Levingston (doc. 126-6 at 48), Nelson (doc. 126-7 at 16-17, 26, 28, 34, 36-38), Reese (doc. 126-8 at 16, 21), Smith (doc. 126-9 at 27-28, 38, 42), Spears (doc. 126-10 at 38-40, 58, 66, 68-69), Williams (doc. 126-11 at 93, 107-108, 111-112), Wilson (doc. 126-12 at 11, 25-29).

at that n[*****];" "That n[*****] need to slow down;" "Boy."[9]  (Docs. 126-2 at 13, 15, 26, 44-45;

126-3 at 25-26, 29, 40; 126-8 at 8, 13; 126-9 at 14, 44.)  The written graffiti included "N[*****];"

"Herb should be picking cotton;" "N[******] must die;" "All n[******] must die;" "N[*****]

sucks;" "The n[*****] b[*******] that brought the n[******] in the world should have been shot;"

"When you look up at the trees, you see a gorilla missing [sic] his face;" "One down.  Seven to go;"

"I hate n[******];" "I hate black, monkeys;" "Fat monkey."  (Docs. 121-2 at 37; 126-3 at 31-32;

126-4 at 11; 126-7 at 27; 126-8 at 21; 126-10 at 38-39, 66; 126-11 at 41, 48; 126-12 at 27.)  The

pictorial graffiti included drawings of monkeys, gorillas and clowns, cartoons with references to lips,

a monkey holding a banana, and swastikas.  (Docs. 126-2 at 40; 126-3 at 59; 126-7 at 36; 126-11

at 49; 126-12 at 28.)

    Defendant has written policies prohibiting discrimination, harassment and retaliation, and

those policies were in effect prior to 2004.  (Docs. 120 at 12; 121-5 at 26-37; 121-38 at 2, 14-15.)

There is also a policy prohibiting workplace graffiti.  (Doc. 121-6 at 3-8.)  In addition to its "stand

alone" policies, Defendant compiled its policies into a comprehensive booklet titled Policy Guide

to Workplace Conduct (Policy Guide) in June 2004.  (Docs. 120 at 12; 121-38 at 2.)  Defendant

distributed the guide to workers and introduced it with a letter from company president James Welch

(Welch), emphasizing that discrimination and harassment were prohibited and that such conduct

would not be tolerated.  (Docs. 120 at 12; 121-5 at 1-24.)  Defendant also maintained a confidential

24-hour hotline known as Ethicspoint, through which employees could lodge complaints about

violations of company policy via telephone, e-mail or the internet.  (Docs. 120 at 13; 121-38 at 2.)

---

[9]  White employees also questioned Jones about why he was associating with African-American coworkers.
(Doc. 121-13 at 20-22; 121-16 at 7-8.)

Plaintiffs received copies of the Policy Guide and knew about the graffiti policy and the complaints hotline. (Doc. 120 at 12; 126-1 at 11; 126-2 at 17-18, 22-23; 126-4 at 10-11, 22; 126-5 at 12-13, 15; 126-7 at 12-15; 126-8 at 16; 126-9 at 11; 126-10 at 12-13, 89; 126-11 at 8.) Plaintiffs testified that Defendant did not enforce its harassment and graffiti policies. (Docs. 126-2 at 12-15, 17-18 26-27; 126-3 at 49-50; 126-4 at 10-11; 126-6 at 46, 50; 126-8 at 22; 126-10 at 63.)

Plaintiffs did not complain to management every time they saw nooses or race-based graffiti and/or heard racial epithets in the workplace. (Docs. 126-2 at 21-22; 126-4 at 19; 126-5 at 45; 126-6 at 51; 126-7 at 30; 126-8 at 28; 126-9 at 30-31; 126-10 at 48-49; 126-11 at 34; 126-12 at 9.) Plaintiffs' coworkers made racial comments in the presence of supervisory employees on several occasions. (Docs. 126-2 at 44-45; 126-4 at 29, 40.) Also, the graffiti and nooses appeared in restrooms and other areas of the terminal frequented by employees and management. (Docs. 126-2 at 28, 34-35; 126-3 at 55-56, 62; 126-4 at 23, 29; 126-5 at 38-40; 126-7 at 51; 126-8 at 21, 25-26; 126-9 at 52; 126-12 at 32.) Plaintiffs maintained that complaints did no good, and that management was fully aware of the intimidation, racial epithets, graffiti and nooses in the workplace. (Docs. 126-2 at 27-28, 34-35; 126-3 at 55-56; 126-4 at 23, 29; 126-5 at 15; 126-6 at 26-27; 126-8 at 15.)

Plaintiffs testified that when they did complain to a supervisor or a manager, sometimes no action was taken. (Docs. 126-2 at 14-15, 17-18, 24-27, 32-33; 126-4 at 16-17; 126-5 at 15-17; 126-8 at 8-15.) On other occasions, Defendant responded by painting over the graffiti in the break room and restrooms, and by removing the nooses. (Docs. 126-1 at 18-19, 27-36; 126-3 at 47-49; 126-4 at 12; 126-5 at 32-33, 49; 126-7 at 16, 27, 54; 126-8 at 25, 27; 126-9 at 49-50, 126-10 at 40, 49; 126-12 at 37.) The individuals who defaced the break room and restrooms, hung nooses in various locations throughout the workplace, and engaged in vandalism of personal property, were never

identified.  (Docs.  126-1 at 34-35; 126-2 at 18-20; 126-5 at 27, 29; 126-6 at 47-49; 126-7 at 27, 31; 126-8 at 15, 23-24; 126-9 at 44-45; 126-10 at 39, 42, 83-84; 126-12 at 17.)  Plaintiffs contend that no one was fired for engaging in race-based conduct in the workplace, and that Defendant never conducted an investigation regarding race-based graffiti and nooses.  (Docs. 126-3 at 54; 126-4 at 16-17; 126-10 at 69-71, 83-84; 126-11 at 53.)

Plaintiffs testified that management allowed nooses (or remnants of nooses) to hang for a long time unless there was a complaint.[10]  (Docs. 126-2 at 28; 126-10 at 34-35, 76-77; 126-12 at 32.) Likewise, graffiti remained in the bathrooms for extended time periods.  (Docs. 126-3 at 32; 126-4 at 12, 41-42; 126-8 at 23; 126-10 at 48, 68-69.)  Defendant painted over the graffiti in response to complaints, but the paint was applied in patches and only covered the graffiti.  (Docs. 121-2 at 37; 126-4 at 41-42;  126-7 at 27-28; 126-8 at 23; 126-9 at 50; 126-10 at 36; 126-12 at 27-28.)  Defendant allegedly did not repaint the employee restrooms until just prior to an onsite visit by the Office of Federal Contract Compliance Program (OFCCP).[11]  (Doc. 126-10 at 78-79.)  Despite repainting, graffiti was still visible in instances where the perpetrator carved the words into the bathroom walls or stall doors because Defendant did not sand the surfaces before painting.  (Docs. 126-7 at 27; 126-10 at 80-81.)  The doors were never replaced.  (*Id*.)  Plaintiffs did not complain to Defendant that its response was inadequate.  (Doc. 126-12 at 28.)

In 2004, Plaintiffs and other employees began holding meetings each Sunday to discuss their

---

[10]  Plaintiffs testified that remnants of one noose remained hanging for several years, and that Defendant did not cut it down until it cleaned up the terminal just prior to a visit by the OFCCP. (Doc. 126-1 at 34-35, 76-77.)

[11]  After repainting the restrooms, Defendant monitored the facilities every two hours to ensure no new graffiti appeared prior to the visit. (Doc. 126-10 at 78-79.)  Plaintiffs testified that Defendant never did that before, and it has not done so since the onsite visit. (*Id*.)

concerns.[12]  (Doc. 121-1 at 2, 8, 10.)  The meetings culminated in the preparation of a letter to the company president, Welch, dated September 27, 2004.  (Doc. 121-6 at 10.)  It detailed a number of concerns,[13] including 1) the need for a safe work environment; 2) vandalism of personal property during work hours; 3) retaliation over refusal to allow others to punch time cards; 4) harassment; 5) minority hiring practices; and 6) double standards for lunch breaks.  (*Id.*)  The letter referenced abuse, unfairness and threats, but there was no mention of racial slurs, graffiti or nooses.  (*Id.*)

In response, John Derry and Don Emery, Defendant's human resources manager and vice president of human resources, met with Plaintiff Freddie Brooks (Brooks), the group's spokesman, and took steps to address the issues identified in the letter.  (Docs. 121-3 at 17; 121-7 at 39; 121-9 at 68; 70-71; 126-6 at 24; 126-7 at 44-45.) Defendant installed additional surveillance cameras, altered procedures for clocking in and out, made changes to its hiring process and revised its driver training program.  (*Id.*)  In addition, Welch followed up by visiting the terminal and meeting with Brooks.  (Docs. 121-1 at 41-42; 121-3 at 19-20; 121-7 at 18, 38.)  He also responded to the letter in writing and detailed Defendant's response to each concern.  (Doc. 121-6 at 11-12.)  The letter explained that certain of Plaintiffs' complaints involved incidents that happened too long ago to be investigated or that pertained to union activity.  (*Id.*)  Welch encouraged Plaintiffs to report any additional problems to human resources.  (*Id.*)

On September 15, 2005, Plaintiffs filed a complaint with the United States Department of Labor through OFCCP.  (Doc. 121-6 at 16-22, 26.)  The complaint alleged racial discrimination in

---

[12]  Carolyn Morris, a former president of the local NAACP, attended the meetings as well.  (Doc. 121-1 at 2-3.)  She advised Plaintiffs to put their concerns in writing and helped them to draft letters.  (Docs. 121-1 at 2-4; 126-1 at 5.)

[13]  Plaintiffs also sent letters to the presidents of the local teamsters union and the international teamsters union.  (Doc. 121-6 at 13; 126-7 at 46.)

the form of harassment, intimidation and retaliation.  (*Id.*)  The complaint listed problems with time cards, firecrackers thrown at black employees, intimidation and violence by white employees toward black employees, vandalism, inequality in work assignments, breaks, handling of workplace grievances, and discipline.  (*Id.*)

OFCCP conducted a lengthy investigation that included in-person interviews and a tour of Defendant's facility.  (Doc. 121-6 at 24-31.)  During the course of the investigation, Plaintiffs also complained of racially-motivated graffiti and nooses in the workplace.  (*Id.*)  OFCCP found the evidence inconclusive as to whether those incidents created a racially hostile environment because the graffiti was a combination of anti-union and racially derogatory comments, and there was no evidence of nooses in the workplace during the onsite inspection.  (*Id.*)  It also determined that Plaintiffs' complaints were related to their union activities rather than their race.  (*Id.*)  Finally, OFCCP determined that Defendant had made appropriate efforts to remedy the graffiti problem by painting and monitoring the restrooms at regular intervals.  (*Id.*)

On November 18, 2005, Plaintiffs and several coworkers filed a lawsuit entitled, *Arrieta, et al v. Yellow Transportation, Inc.*, 3:06-CV-2271-D.  (Doc. 120 at 21 n. 27.)  On August 28, 2006, the Court granted Plaintiffs leave to sever their claims.  (*See* doc. 1.)  On September 11, 2006, Plaintiffs filed their amended complaint in this case.  (*See* doc. 2.)  Defendant now moves for summary judgment on Plaintiffs' § 1981 hostile work environment claim and Williams' failure-to-hire claim.  (*See* doc. 119.)

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the pleadings and evidence on file show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a

matter of law.  FED. R. CIV. P. 56(a).  "[T]he substantive law will identify which facts are material."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A genuine issue of material fact exists

"if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Id*.

The movant makes a showing that there is no genuine issue of material fact by informing the court

of the basis of its motion and by identifying the portions of the record which reveal there are no

genuine material fact issues.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  In a case in which

"the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant

he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential

elements of the claim or defense to warrant judgment in his favor."  *Fontenot v. Upjohn Co.*, 780

F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original).

Once the movant makes this showing, the non-movant must then direct the court's attention

to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial.

*Celotex*, 477 U.S. at 324.  To carry this burden, the non-movant "must do more than simply show

that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co., Ltd.*

*v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The non-movant must show that the evidence is

sufficient to support a resolution of the factual issue in her favor.  *Anderson*, 477 U.S. at 249.

While all of the evidence must be viewed in a light most favorable to the motion's opponent,

*Anderson*, 477 U.S. at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)),

neither conclusory allegations nor unsubstantiated assertions satisfy the non-movant's summary

judgment burden, *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *Topalian*

*v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992).  Summary judgment in favor of the movant is

proper if, after adequate time for discovery, the motion's opponent fails to establish the existence

10

of an element essential to his case and as to which he will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322-23. "The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).[14] "The parties may satisfy their respective burdens by 'citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials.'" *Rooters v. State Farm Lloyds*, 428 F. App'x 441, 445 (5th Cir. 2011) (per curiam) (citing Fed. R. Civ. P. 56(c)(1)).

### III. EVIDENTIARY OBJECTIONS

Defendant initially objects that the affidavits do not attest that they are based on personal knowledge or that the affiant is competent to testify to the matters stated. (Doc. 131 at 9.) Although Rule 56(c)(4) requires personal knowledge and competence to testify, "there is no requirement for a set of magic words." *DIRECTV, Inc. v. Budden*, 420 F.3d 521, 530 (5th Cir. 2005); *see also Lodge Hall Music, Inc. v. Waco Wrangler Club, Inc.*, 831 F.2d 77, 80 (5th Cir. 1987). Personal knowledge and competence to testify may be inferred based on the affiant's position and participation in the matters addressed in their testimony. *DIRECTV, Inc.*, 420 F.3d at 530 (citing *Barthelemy v. Air Lines Pilots Ass'n*, 897 F.2d 999, 1018 (9th Cir. 1990) (per curiam)). Because Plaintiffs' affidavits are based on their experience as employees at Defendant's freight terminals, their affidavits meet the requirements of Rule 56(c). To the extent that Defendant moves to strike Plaintiffs' affidavits entirely on this basis, the motion is **DENIED**.

---

[14] Where the record is voluminous, as in this case, cursory briefing and brief citation to large blocks of material in the appendix could be found insufficient to meet this specificity standard. Courts have no obligation to "sift through the record in search of evidence to support a party's opposition to summary judgment." *Adams v. Travelers Indem. Co.*, 465 F.3d 156, 164 (5th Cir. 2006) (quoting *Ragas*, 136 F.3d at 458).

Defendant also lodges specific objections as to each of Plaintiffs' affidavits. (*Id*. at 10-28.) It asserts that the affidavits are largely conclusory, unsubstantiated, speculative, based on subjective belief, and they contain hearsay, show a lack of personal knowledge, contain nonspecific references as to time and subject matter, or are irrelevant to their claims. (*Id*. at 10.)  Because the Court did not rely on Plaintiffs' affidavits in reaching its conclusions regarding Defendant's motion for summary judgment, the motion to strike is **DENIED as moot**. *See Continental Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, :04-CV-1866-D, 2006 WL 984690, at *1 n. 6 (N.D. Tex. Apr. 14, 2006) (overruling as moot objections to evidence that is not considered in deciding motion for summary judgment); *Enochs v. Lampasas Cnty.*, No. A-09-CA-054-SS, 2009 WL 4598267, at *7 (W.D.Tex. Dec.2, 2009) (denying as moot motion to strike evidence, when the court did not rely on the evidence), *vacated on other grounds*, 641 F.3d 155 (5th Cir. 2011).

## IV. HOSTILE WORK ENVIRONMENT

Defendant moves for summary judgment on Plaintiffs' hostile work environment claims on grounds that the claims are barred by the statute of limitations as well as by their inability to establish the final three elements of their *prima facie* case.  (Doc. 120 at 54-55.)

### A.      Statute of Limitations (Pre-2001 Conduct)

Defendant contends that claims based on conduct that occurred more than four years prior to the filing of the lawsuit in 2005 are time-barred. (*Id*. at 54.) Plaintiffs respond that the continuing violation theory makes all of the conduct at issue actionable. (Doc. 125 at 23-24.) In the alternative, they argue that the prior conduct is relevant background evidence or provides important context for actionable conduct within the limitations period. (*Id*. at 24.)

The federal "catch-all" limitations period in 28 U.S.C. § 1658 governs hostile work

environment claims.  *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 383 (2004); *Johnson v. Crown Enters., Inc.*, 398 F.3d 339, 341 (5th Cir. 2005).  Section 1658 provides that an action "may not be commenced later than 4 years after the cause of action accrues."  28 U.S.C. § 1658(a).  The statute of limitations is an affirmative defense on which the defendant bears the burden of proof.  *Martin v. Alamo Cmty. College Dist.*, 353 F.3d 409, 412 (5th Cir. 2003).

The limitations period for hostile work environment claims is subject to tolling if a plaintiff can show a continuing violation.  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002); *see also Molina v. Vilsack*, 748 F. Supp.2d 702, 710 n. 5 (S.D. Tex. 2010) (citing *Huckabay*, 142 F.3d at 239) (plaintiff bears the burden of establishing a continuing violation); *Ryals v. American Airlines,* Inc., No. 4:08-CV-460-Y, 2010 WL 3582605, *5 (N.D. Tex. Sept. 13, 2010)   (citing *Stewart v. Mississippi Transp. Comm'n*, 586 F.3d 321, 328 (5th Cir. 2009) (imposing burden on plaintiff to show continuing violation doctrine is applicable).[15]

> Hostile environment claims are different in kind from discrete acts.  Their very nature involves repeated conduct.  The "unlawful employment practice" therefore cannot be said to occur on any particular day.  It occurs over a series of days or perhaps years, and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own.

*Morgan*, 536 U.S. at 115.  As a result,

> It does not matter, for purposes of the statute, that some of the component acts of the hostile work environment fall outside the statutory time period.  Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability.

*Id*. at 117; *see also Abner v. Kansas City S. R.R. Co.*, 513 F.3d 154, 166 (5th Cir. 2008) (alteration

---

[15]Conduct that occurred prior to the November 21, 1991 amendment of the statute is not actionable, however.  *See Jones v. Alcoa, Inc.*, 399 F.3d 359, 362-363 (5th Cir. 2003); *Felton v. Polles*, 315 F.3d 470, 484-485 (5th Cir. 2002), *overruled on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006).

in original) (quoting *Morgan*, 536 U.S. at 115) ("A hostile work environment claim necessarily involves 'the cumulative [e]ffect of individual acts,' and evidence presented in support of these claims may fall outside of the statutory period.").  To invoke the continuing violation theory, a plaintiff must demonstrate that the acts falling outside the limitations period are related to those within the filing period, and that the violation is continuing.[16]  *Stewart*, 586 F.3d at 328.

In deciding whether acts are related, courts consider "(1) whether the alleged acts involve the same type of discrimination; (2) whether the acts are recurrent; and (3) whether the acts have the degree of permanence that alert the employee to assert his rights."  *Verrett v. Dallas Indep. Sch. Dist.*, No. 3:07-CV-585-B, 2008 WL 4133338, at *4 (N.D. Tex. Sept. 3, 2008) (citing *Huckabay v. Moore*, 142 F.3d 233, 239 (5th Cir. 1998)).  This Court has previously found the continuing violation theory applicable based on the same or similar evidence of recurrent racially offensive graffiti and nooses in Defendant's workplace.  *See Arrieta v. Yellow Transp., Inc.*, No. 3:05-CV-2271-D, 2008 WL 5220569, at *26 (N.D. Tex. Dec. 12, 2008), *aff'd sub nom. Hernandez v. Yellow Transportation, Inc.*, 670 F.3d 644 (5th Cir. 2012) ; *see also Rock-Tenn Servs. Co., Inc.*, 2012 WL 4747186, at *11 (persistent racist graffiti in employee bathrooms and locker rooms sufficiently related and continuous to invoke the continuing violation doctrine).

Here, Defendant argues that conduct occurring prior to November 18, 2001 is not actionable. (Doc. 120 at 54.)  It maintains that Plaintiffs cannot show that they did not understand the nature of

---

[16] Before *Morgan*, the Fifth Circuit required a plaintiff to show that he suffered race-based harassment prior to and during the limitations period, that the incidents were related, *and* that "the harassment was pursuant to an organized scheme."  *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 353 (5th Cir. 2001).  Though the Fifth Circuit has yet to explicitly address *Celestine*'s continued viability, it is "clear that the continuing violation doctrine with respect to hostile work environment claims is more properly addressed through a post-*Morgan* lens."  *EEOC v. Rock-Tenn Servs. Co., Inc.*, ___ F. Supp.2d ___, 2012 WL 4747186, at *10 (N.D. Tex. Aug. 22, 2012) (citing *Stewart,* 586 F.3d at 328).

the conduct at the time it occurred.[17]  (*Id*. at 55.)  Where, as here, the non-movant bears the burden

of proof, the movant's burden may be discharged by pointing out an absence of evidence to support

the non-movant's case.  *Celotex*, 477 U.S. at 325.  To defeat the motion for summary judgment, the

non-movant must then identify facts that support all the essential elements of his claim.  *Vela v. City*

*of Houston*, 276 F.3d 659, 666 (5th Cir. 2001).  "[I]f the non-movant fails to present sufficient facts

to support an essential element of his claim, summary judgment is appropriate."  *Id*. (citing *Celotex*,

477 U.S. at 322-23).

The burden now shifts to Plaintiffs to identify evidence sufficient for a reasonable jury to

conclude that the discriminatory acts falling outside the limitations period are related to those within

the filing period, and that the violation is a continuing one.  Plaintiffs point out that the acts of racial

hostility and harassment that occurred outside the limitations period are similar in nature to those

after 2001, e.g., during both periods there were continued instances of graffiti and nooses in the

workplace.  (Doc. 125 at 24.)  No perpetrators could be identified, but the conduct involved the same

victims, African-Americans.  (Docs.  126-1 at 34-35; 126-2 at 18-20; 126-5 at 27, 29; 126-6 at 47-

49; 126-7 at 27, 31; 126-8 at 15, 23-24; 126-9 at 44-45; 126-10 at 39, 42, 83-84; 126-12 at 17.)

Plaintiffs' appendix materials evidence a related series of acts that are sufficiently continuous to be

part of the same actionable hostile work environment.[18]  *See also Arrieta*, 2008 WL 5220569, at *26;

---

[17]  The scope of the continuing violation theory may be limited based on equitable principles such as
laches.  *Id*.; *Morgan*, 536 U.S. at 121-122. Defendant also raises a laches argument, but does not brief the issue.
(Doc. 120 at 55.)  Accordingly, laches has not been considered.  *See Sabre, Inc. v. Lyn-Lea Travel Corp.*, No. 3:96-
CV-2068R, 2003 WL 21339291 (N.D. Tex. June 5, 2003) (Mag. J.) (citing *McKethan v. Texas Farm Bureau*, 996
F.2d 734, 739 n. 9 (5th Cir. 1993) (failure to adequately brief issue constitutes waiver).

[18]  Even if some of the incidents that occurred outside the limitations period are not actionable, the conduct
is highly probative and is not substantially outweighed by the possibility of prejudice under Rule 403 for purposes of
this motion.  *Morgan*, 536 U.S. at 113 (statute of limitations does not "bar an employee from using the prior acts as
background evidence in support of a timely claim"); *see also Rock-Tenn Servs. Co., Inc.*,2012 WL 4747186, at
*11(same).

*Rock-Tenn Servs. Co., Inc.*, 2012 WL 4747186, at *11.  Finally, the specific instances of conduct

at issue here (racial epithets, graffiti and nooses) were not discrete acts, the "permanence" of which

should have alerted Plaintiffs to assert their rights.  *See Morgan*, 536 U.S. at 115; *Huckabay*, 142

F.3d at 239; *Verrett*, 2008 WL 4133338, at *4.  Because there are genuine issues of material fact as

to whether the pre-2001 conduct at issue was part of a continuing violation, Defendant's motion for

summary judgment based on the statute of limitations should be denied.

**B.     *Prima Facie* Case**

Defendant contends that Plaintiffs cannot establish all elements of their *prima facie* case.

(Doc. 120 at 56.)  Plaintiffs respond that the record evidence is sufficient to establish a triable issue

of fact as to each of the elements in question.  (Doc. 125 at 8-9, 11-22.)

Harassment is actionable only when "it is so severe or pervasive as to alter the conditions

of [the victim's] employment and create an abusive working environment."  *Clark Cnty. Sch. Dist.*

*v. Breeden*, 532 U.S. 268, 270 (2001) (per curiam) (internal quotation marks omitted).  The elements

of a harassment claim are the same under Title VII and § 1981.  *Willrich v. Ctr. for Health Care*

*Servs.*, No. SA-06-CA-958-XR, 2007 WL 1300470, at *3 (W.D. Tex. May 3, 2007).  Generally, a

plaintiff establishes a *prima facie* case of harassment or hostile work environment by showing that

(1) he is a member of a protected group, (2) he was subjected to unwelcome harassment, (3) the

harassment was based on race or other protected characteristics, and (4) the harassment affected a

term, condition, or privilege of employment.  *Celestine*, 266 F.3d at 353; *Parker v. State of La. Dep't*

*of Educ. Special Sch. Dist.*, 323 F. App'x 321, 325 (5th Cir. 2009) (per curiam).  When the alleged

harasser is not a supervisor, the *prima facie* case also normally requires that "the employer knew or

should have known of the harassment in question and failed to take prompt remedial action."

16

*Celestine*, 266 F.3d at 353.

### 1.    Racial Harassment

Defendant contends that Plaintiffs cannot establish the third element of their claim, that they were subjected to harassment based on race, because the conduct about which they complain stemmed from a political divide in the union rather than race.  (Doc. 120 at 56-57.)  Plaintiffs respond that there was racially-motivated conduct on the part of their coworkers.  (Doc. 125 at 8-9, 11-22.) The third element of the hostile environment framework requires that the harassment, either through words or actions, be based on race.  *Id.*, 266 F.3d at 353; *Parker*, 323 F. App'x at 325.

Here, Defendant points to evidence showing that there is a clique within the union that supports the Program, and that union members who do not follow the Program are subjected to retaliatory acts such as greased forklifts, glued lockers, firecrackers, stolen time cards and automobile vandalism.  (Docs. 120 at 56-57; 121-3 at 6, 9-10, 12; 121-9 at 72; 121-27 at 17.)  This evidence is sufficient to meet Defendant's initial summary judgment burden.

The burden now shifts to Plaintiffs to point to evidence in the record raising an issue of fact as to whether they suffered race-based harassment.  Plaintiffs point to evidence of racial epithets, racially-motivated graffiti, and nooses in the break room, above the time clock and on the freight docks.  (Docs. 121-1 at 11; 121-2 at 37-38, 42; 121-4 at 33; 126-1 at 5, 27-30, 33; 126-2 at 13, 15, 26-32, 38-40, 44-45; 126-3 at 25-26, 29, 40, 46, 48-49, 53-57, 59; 126-5 at 43, 51; 126-6 at 27, 40-46; 126-7 at 30, 32, 36; 126-8 at 8, 13, 21, 24-29; 126-9 at 14, 27-30, 39-40, 44; 126-10 at 54, 56-58, 64, 74-76; 126-11 at 49, 108-111; 126-12 at 11, 28, 30-38.)  Plaintiffs have met their burden to show that there are genuine issues of material fact as to whether they suffered harassment based on race.

## 2.      Terms and Conditions of Employment

Defendant contends that Plaintiffs cannot demonstrate the fourth element of their claim, that racial hostility in the workplace was so severe and pervasive that it affected the terms and conditions of their employment.  (Doc. 120 at 57.)  Plaintiffs respond that the environment impacted them personally, and that a reasonable person would have perceived it as hostile.  (Doc. 125 at 18-22.)

To be actionable, the alleged behavior must be "severe or pervasive enough to create an objectively hostile or abusive work environment–an environment that a reasonable person would find hostile or abusive." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998).  The totality of the circumstances are considered, "including the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Breeden*, 532 U.S. at 270-71 (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 787-88 (1998)).  Allegations of simple teasing, offhand comments, and isolated incidents, unless extremely serious, do not suffice. *Id*. at 271 (quoting *Faragher*, 524 U.S. at 788).  The high standard for the above inquiries serves to ensure that Title VII does not become a "general civility code." *Faragher*, 524 U.S. at 788.

Here, Defendant points to Plaintiffs' admissions that they have succeeded in the workplace as evidence that the alleged race-based harassment did not affect the terms and conditions of their employment.  (Docs. 120 at 57; 121-2 at 13-14; 121-7 at 7-8; 121-11 at 11, 29-31, 43, 92; 121-21 at 12-13; 25-26; 121-23 at 5-7; 121-25 at 8-9; 40, 73; 121-27 at 2, 38; 121-28 at 2; 121-35 at 29-31.)  Assuming for purposes of this motion that the evidence is sufficient to meet Defendant's initial summary judgment burden, the burden shifts to Plaintiffs to direct the Court's attention to evidence in the record raising an issue of fact as to whether a reasonable person would have perceived the

work environment as hostile or abusive.

Plaintiffs point to evidence of the persistent presence of race-based graffiti and nooses hanging in the work place, and the threatening nature of the writings, drawings, and nooses.  (Docs. 121-1 at 11; 121-2 at 37-38, 42; 121-4 at 33; 126-1 at 5, 27-30, 33; 126-2 at 13, 15, 26-32, 38-40, 44-45; 126-3 at 25-26, 29, 40, 46, 48-49, 53-57, 59; 126-5 at 43, 51; 126-6 at 27, 40-46; 126-7 at 30, 32, 36; 126-8 at 8, 13, 21, 24-29; 126-9 at 14, 27-30, 39-40, 44; 126-10 at 54, 56-58, 64, 74-76; 126-11 at 49, 108-111; 126-12 at 11, 28, 30-38.)  They also point out testimony regarding the impact of the environment on them.  (Docs. 126-2 at 13, 47; 126-3 at 25-26, 40, 49, 51; 126-7 at 38; 126-11 at 108; 126-9 at 36-38; 126-10 at 80; 126-12 at 41-43.)

In *Arrieta*, this Court found under almost identical facts that evidence of persistent racially offensive graffiti, nooses in the workplace, extensive vandalism of lockers, equipment and automobiles and threatening and/or dangerous conduct sufficed to demonstrate a triable issue of fact as to whether the harassment affected a term or condition of employment.  2008 WL 5220569, at *26-27; *see also Rock-Tenn Servs. Co., Inc.*, 2012 WL 4747186, at *12 (district court found evidence of nooses and graffiti including KKK, swastikas and threats such as "die n[*****] die" sufficiently severe or pervasive to survive summary judgment).  Plaintiffs have met their summary judgment burden to identify a genuine issue of material fact as to whether a reasonable person would consider the work environment so hostile so as to affect the terms and conditions of employment, and the Court should deny Defendant's motion as to this issue.

### 3.      Notice of Harassment/Failure to Take Prompt Remedial Action

Defendant also contends that Plaintiffs cannot show that it had actual or constructive notice of the alleged harassment and failed to take prompt action to address it.  (Doc. 120 at 57-59.)

19

Plaintiffs respond that Defendant's management staff knew, or should have known, about the racially charged worked environment.  (Doc. 125 at 8-9, 11-22.)

One element of a hostile work environment claim is that the employer "knew or should have known of the harassment and failed to take prompt remedial action."  *EEOC v. WC & M Enters., Inc.,* 496 F.3d 393, 399 (5th Cir. 2007).  A plaintiff may demonstrate knowledge of discriminatory conduct by showing that the employer had either actual or constructive notice.  *Griffin v. Delchamps, Inc.*, 176 F.3d 480, 1999 WL 155682, at *9 (5th Cir. Mar. 12, 1999); *Rock-Tenn Servs. Co., Inc.,* 2012 WL 4747186, at *13.  "Actual notice can be proved by evidence that the plaintiff complained to someone in management with the authority to take remedial action, whereas constructive notice is demonstrated by showing that the harassment was sufficiently pervasive to give 'rise to the inference of knowledge or constructive knowledge' on the part of someone with remedial authority."  *Griffin*, 1999 WL 155682, at *9 (internal citations omitted).

A plaintiff must also show that the employer failed to take prompt action "reasonably calculated to end the harassment."  *Rock-Tenn Serve. Co., Inc.*, 2012 WL 4747186, at *13.  "[W]hen graffiti is reported to the employer and the employer promptly removes the offending language, the employer has taken appropriate remedial action."  *Id*. at *14 (citing *Potage v. Natal Cart Co.*, 95 F. App'x 847, 848 (8th Cir. 2004) (per curiam)).  The recurrence of graffiti does not necessarily show that the response was not "reasonably calculated to end the harassment."  *Id*. (citing *Tademy v. Union Pac. Corp.*, 614 F.3d 1132, 1148 (10th Cir. 2008).  "[I]f the graffiti remains over an extended period of time, or the employer's response is repeatedly ineffective in eliminating the racist graffiti, a fact question arises as to the reasonableness of the employer's response and whether additional investigative and ameliorative actions were warranted."  *Id*.

Here, Defendant points to its policies prohibiting workplace harassment and discrimination and the various mechanisms through which Plaintiffs could have voiced complaints. (Docs. 120 at 58; 121-5 at 1-24, 26-37; 121-38 at 2, 14-15; 121-6 at 3-8; 121-38 at 2.)  It points to evidence that Plaintiffs did not complain about slurs and other racially derogatory comments. (Docs. 120 at 58; 121-6 at 10; 126-2 at 21-22; 126-4 at 19; 126-5 at 45; 126-6 at 51; 126-7 at 30; 126-8 at 28; 126-9 at 30-31; 126-10 at 48-49; 126-11 at 34; 126-12 at 9.)  Defendant also cites its response to the issues about which Plaintiffs did complain, e.g., management's response to Plaintiffs' September 27, 2004 letter, and the action it took to remove offensive graffiti and nooses in response to Plaintiffs' complaints.  (Doc. 120 at 58; Docs. 126-1 at 18-19, 27-36; 126-3 at  47-49; 126-4 at 12; 126-5 at 32-33, 49; 126-7 at 16, 27, 54; 126-8 at 25, 27; 126-9 at 49-50, 126-10 at 40, 49, 78-79; 126-12 at 37.)  This evidence is sufficient to meet Defendant's initial summary judgment burden.

The burden now shifts to Plaintiffs to point to evidence in the record raising an issue of fact as to whether Defendant knew or should have known of its employees' conduct and failed to take steps reasonably calculated to remedy the problems.  Plaintiffs point to evidence that Defendant had notice of the offensive work environment because the acts occurred within hearing and sight of supervisory employees.  (Docs. 126-2 at 44-45; 126-4 at 29, 40.)  They point to evidence that Defendant's employees yelled out phrases such as "Get a rope" and "N[*****] lover" in shift meetings and workplace hallways.  (*Id.*)  Plaintiffs testified that nooses and graffiti appeared in areas of the terminal frequented by *all* employees, including management.  (Docs. 126-2 at 28, 34-35; 126-3 at 55-56, 62; 126-4 at 23, 29; 126-5 at 38-40; 126-7 at 51; 126-8 at 21, 25-26; 126-9 at 52; 126-12 at 32.)  Plaintiffs also point out that Defendant allowed the nooses (or remnants of nooses) to hang in the workplace for years, and that it merely camouflaged graffiti rather than eliminating

it by sanding the surfaces before painting over it or remodeling the restrooms and break area entirely. (Docs. 121-2 at 37; 126-2 at 28; 126-3 at 32; 126-4 at 12, 41-42; 126-7 at 27-28; 126-8 at 23; 126-9 at 50; 126-10 at 34-36, 48, 68-69, 76-81; 126-12 at 27-28, 32.) Plaintiffs have met their burden to show that genuine issues of material fact remain as to whether Defendant had actual or constructive notice of discriminatory harassment and failed to take measures reasonably calculated to end it. *Griffin*, 1999 WL 155682, at *9; *Rock-Tenn Servs. Co., Inc.*, 2012 WL 4747186, at *13. Defendant's motion for summary judgment based on failure to establish all elements of a *prima facie* case should be denied.

## C.   Jones' Associational Claim

Defendant contends that it is entitled to summary judgment on Jones' hostile work environment claim because he cannot show race-based harassment. (Doc. 120 at 73-76.) Jones responds that he suffered actionable harassment because of his association with African-American coworkers. (Doc. 15 at 24-25.)

Section 1981 prohibits discrimination "on the basis of a personal relationship between the employee and a person of a different race." *Floyd v. Amite Cnty. Sch. Dist.*, 581 F.3d 244, 249 (5th Cir. 2009).[19] A plaintiff may not recover for associational discrimination unless he can prove that the actionable conduct is predicated on his *own* race, however, not those with whom he has an

---

[19]   The Fifth Circuit has recognized racial discrimination claims premised on intimate interracial relationships, but it has yet to consider whether non-intimate relationships are subject to constitutional or statutory protection. *Deffenbaugh-Williams v. Wal-Mart Stores, Inc.*, 156 F.3d 581, 588-89 (5th Cir. 1998) (recognizing Title VII discrimination claim brought by Causasian female who was dating African-American male), *rev'd in part on other grounds*, 169 F.3d 215 (5th Cir.), *reinstated in relevant part on reh'g en banc*, 182 F.3d 333 (5th Cir. 1999) (en banc). District courts within the Fifth Circuit have refused to extend the reach of the statute to claims based on "a vague and general association." *Arrieta*, 2008 WL 5220569, at *14 (granting summary judgment on associational discrimination claim of Caucasian co-plaintiff in companion case); *see also Cargo v. Kansas City S. Ry. Co.*, No. 05-2010, 2012 WL 1567166, at *3 (W.D. La. May 1, 2012) (noting the absence of controlling precedent); *Pittman v. Gen. Nutrition Corp.*, 515 F. Supp.2d 721 (S.D. Tex. 2007) (finding that plaintiff failed to identify a relationship that constituted a protected association).

interracial association.  *Floyd*, 581 F.3d at 249-50 & n. 4 (citations omitted). In *Floyd*, the Fifth Circuit affirmed summary judgment where an African-American high school coach was unable to prove that he was terminated from his job as a result of racial animus stemming from his relationship with white athletes.  *Id*.  The Court acknowledged the evidence of clear racial animus but held that the racial animus was directed solely towards the white students, not at the plaintiff on the basis of *his* race.  *Id*.; *see also Cargo*, 2012 WL 1567166, at *4 (granting summary judgment where plaintiff's associational discrimination claim was founded on "[standing] up for black people" because his race was irrelevant: "[F]rom all of the . . . testimony, [plaintiff] could have been Causasian, African-American, or any other race and the results would have been precisely the same.").  In *Arrieta*, the district court found that a Caucasian plaintiff's association with minorities based on opposition to racial discrimination did not support his race discrimination claim: "Title VII's 'substantive provision seeks to prevent injury to individuals based on who they are, i.e., their status,' while the statute's 'anti-retaliation provision seeks to prevent harm to individuals based on what they do, i.e., their conduct.'"[20]  *Arrieta*, 2008 WL 5220569, at *14.

Here, Defendant contends that Jones cannot demonstrate that he was subjected to harassment based on *his* race.  (Doc. 120 at 73-76.)  It points to Jones' admission that he was harassed because he decided to "stand for the black workers."  (*Id*. at 74.)  This evidence is sufficient to meet Defendant's initial summary judgment burden.

The burden now shifts to Jones to direct the Court's attention to evidence which creates a genuine issue of material fact as to whether the harassment he suffered was based on his race.  To do so, Jones points to evidence that a coworker called him a "n[*****] lover" in front of a

---

[20]  Jones has not pled a retaliation claim.  (*See* doc. 111.)

supervisory employee and that others asked him about his association with African-American coworkers.  (Docs. 121-13 at 20-22; 121-16 at 7-8; 125 at 25; 126-4 at 29.)  As in *Floyd*, although the evidence is clearly indicative of racial animus, it shows no animus toward Jones based on *his* race.  Viewed in the light most favorable to Jones, the evidence adduced is insufficient to withstand Defendant's properly supported motion.  *Id.*; *Cargo*, 2012 WL 1567166, at *4.  Defendant's motion for summary judgment as to this issue should be granted.[21]

## IV. FAILURE TO HIRE

Defendant moves for summary judgment on Williams' failure-to-hire claim based on the statute of limitations and his inability to establish the elements of his *prima facie* case and/or demonstrate pretext.  (Doc. 120 at 76-78.)

### A.    Limitations

Defendant contends any claim based on a failure to hire Williams as a regular employee between 1996 and October 19, 2001 is time-barred.  (*Id.* at 77.)

Defendants have the burden on summary judgment to prove their statute of limitations defense.  *See Crescent Towing & Salvage Co., Inc. v. M/V Anax*, 40 F.3d 741, 744 (5th Cir. 1994) (citing *Celotex*, 477 U.S. at 322-23) (affirmative defense requires the movant on summary judgment to establish each element of defense as a matter of law); *Fontenot*, 780 F.2d at 1194 (where the movant bears the burden of proof on an issue, he must establish all of the essential elements of a claim to warrant judgment in his favor).

Section 1981 claims for failure to hire are governed by the limitations period for personal

---

[21]  Defendant also contends that Jones cannot meet the burden of proving that the alleged harassment affected the terms or conditions of his employment and/or that Defendant knew (or should have known) of the harassment and failed to take prompt remedial action.  (Doc. 120 at 74-75.)  Because Jones cannot demonstrate that he suffered harassment based on his race, it is not necessary to address Defendant's additional arguments.

injury claims under relevant state law. *Crown Enters., Inc.*, 398 F.3d at 341. In Texas, the applicable limitations period is two years. TEX. CIV. PRAC. & REMEDIES CODE ANN. § 16.003 (West 2002); *Helton v. Clements*, 832 F.2d 332, 334 (5th Cir. 1987). A defendant's refusal to hire is a discrete act and therefore is not subject to the continuing violation doctrine discussed in connection with the hostile environment claim. *Mitchell v. Crescent River Port Pilots Ass'n*, 265 F. App'x 363, 369 (5th Cir. 2008) (citing *Morgan*, 536 U.S. at 113).

Here, Defendant points out that Williams' first tenure as a casual worker ran from 1996 to October 19, 2001, and that the statute of limitations expired before Williams filed suit on November 18, 2005. (*Id*. at 48, 50-51, 77; 126-11 at 6.) This evidence is sufficient to meet Defendant's initial summary judgment burden. The burden now shifts to Williams to point to evidence that creates a genuine issue of material fact as to whether his claim that Defendant failed to hire him as a regular employee during his initial stint as a casual worker is time-barred. Williams has not done so. Because Defendant has established that the statute of limitations bars Williams' failure -to-hire claim for the period between 1996 and October 19, 2001, its motion for summary judgment on this issue should be granted.

## B.   *Prima Facie* **Case**

Defendant next contends that Williams cannot prove the all elements of his *prima facie* claim for failure to hire him as a regular employee between 2006 and 2008. (Doc. 12 at 77-78.)

Section 1981 claims for racial discrimination in the employment context are analyzed under the same well established burden-shifting paradigm as Title VII claims. *Jenkins v. Methodist Hosps. of Dallas, Inc.*, 478 F.3d 255, 260 (5th Cir. 2007). "First, the plaintiff must establish by a preponderance of the evidence a *prima facie* case of discrimination." *Nichols v. Lewis Grocer*, 138

F.3d 563, 566 (5th Cir. 1998).  A plaintiff may establish a *prima facie* case of discrimination through either direct evidence, statistical proof, or the test established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Urbano v. Cont'l Airlines, Inc.*, 138 F.3d 204, 206 (5th Cir. 1998).  Under the framework set forth in *McDonnell Douglas*, to establish a *prima facie* case of failure to hire, a plaintiff must show that he (1) belongs to a protected group; (2) applied and was qualified for a position for which the defendant was seeking applicants; (3) was not hired; and (4) the position either remained open or someone outside the protected class was selected to fill it.  *Plemer v. Parsons-Gilbane*, 713 F.2d 1127, 1135 (5th Cir. 1983) (citing *McDonnell Douglas Corp.*, 411 U.S. at 802); *see also Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1087 (5th Cir. 1994) (per curiam).

If the plaintiff establishes a *prima facie* case, an "inference of intentional discrimination" arises.  *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009).  The burden of production then shifts to the defendant to articulate a legitimate, non-discriminatory reason for the challenged employment action.  *Okoye v. Univ. of Texas Houston Health Sci. Ctr.*, 245 F.3d 507, 512 (5th Cir. 2001) (citing *Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 142 (2000)).  Once the defendant has responded with a legitimate, non-discriminatory reason,

> the plaintiff must then offer sufficient evidence to create a genuine issue of material fact either (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic (mixed-motive alternative).

*Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 341 (5th Cir. 2005) (citing *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004)).  Under the pretext alternative, the plaintiff must introduce "some evidence, whether circumstantial or direct, that permits the jury to believe that the

reason was false and that illegal discrimination was the actual reason." *Nichols*, 138 F.3d at 566. Under the mixed-motive alternative, a plaintiff need only present sufficient evidence for a reasonable jury to conclude that the protected characteristic was a motivating factor for the employment practice. *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 101 (2003).

### 1.    Qualified

To establish the second element of a *prima facie* case in the context of a failure to hire claim, a plaintiff must demonstrate not only that he was qualified for the position in question, but that the employer had an opening and he applied for the job. *Godfrey v. Katy Indep. Sch. Dist.*, 395 F. App'x 88, 91 n. 15 (5th Cir. 2010) (per curiam).

Here, Defendant argues that Williams cannot show that he applied for an open regular position for which he qualified between 2006 (when he was rehired as a casual employee) and 2008 (the last time he worked for Defendant as a casual worker), or that any such position remained unfilled after he applied.  (*Id.*)  Defendant has met its initial burden by pointing out the absence of evidence to support the non-movant's case.  *Celotex*, 477 U.S. at 325.

The burden now shifts to Williams to show that Defendant had an opening for a regular employee for which he qualified, and that he applied for it.   Williams' deposition testimony establishes that he applied for an open dockworker/city driver position between 2006 and 2008, that he possessed the necessary qualifications for the job.  (Doc. 126-11 at 35-38, 44-46.)  A genuine issue of material fact exists regarding the second element of Williams' *prima facie* case.

### 2.    Treated Less Favorably

To establish the fourth element of a *prima facie* case in the context of a failure to hire claim, a plaintiff must present evidence that he was rejected for an available position "'under circumstances

which give rise to an inference of unlawful discrimination.'" *Johnson v. Maestri-Murrell Property Management*, 2012 WL 3488553 (5th Cir. Aug. 14, 2012) (per curiam) (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. at 253 (1981)).   The position must either remain open or be filled by a person outside the protected class.   *Barrientos v. City of Eagle Pass, Tex.*, 444 F. App'x 756, 759 (5th Cir. 2011) (per curiam); *Godfrey*, 395 F. App'x at 91 n. 15; *Amie v. El Paso Indep. Sch. Dist.*, 253 F. App'x 447, 452 (5th Cir. 2007) (per curiam).

Here, Defendant maintains that Williams cannot show that the position remained open after his application.   (Doc. 120 at 77-78.)   Defendant has met its initial burden by pointing out the absence of evidence to support his case.   *Celotex*, 477 U.S. at 325.

The burden now shifts to Williams to point out evidence that raises a genuine issue of material fact regarding the final element of his *prima facie* case.   Williams points to his deposition testimony that Defendant hired a white employee, Luther LNU, to fill the opening instead of him. (Doc. 126-11 at 35-38.)   This evidence is sufficient to show a genuine issue of material fact regarding whether Defendant filled the open position with someone outside of the protected class.

## C.    Legitimate Non-Discriminatory Reason

Because Williams has come forward with evidence of a *prima facie* case, an "inference of intentional discrimination" arises.   *Lee*, 574 F.3d at 259.   The burden shifts to Defendant to articulate a legitimate non-discriminatory reason for its decision to hire Luther LNU rather than Williams. *Okoye*, 245 F.3d at 512.   The Fifth Circuit has noted that an employer's proffered reason need not be persuasive or even credible, only legitimate and non-discriminatory.   *See Bodenheimer v. PPG Indus.*, 5 F.3d 955, 958 (5th Cir. 1993).

Here, Defendant's proffered legitimate non-discriminatory reason for its failure to offer

28

Williams full-time employment, i.e., financial difficulties in 2008 and afterwards, explains why it stopped calling Williams into work in 2008.  (Doc. 120 at 78.)  It does not address the alleged failed to hire him for the open position that was ultimately awarded to Luther LNU between 2006 and 2008.  (*Id.*)  Defendant has therefore failed to meet its burden of production.  *See Kirkwood v. Inca Metal Prods. Corp.*, 2008 WL 245941, at *6 (N.D. Tex. Jan. 30, 2008) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993) ("A defendant fails to meet the production burden when it does not 'introduce evidence which, *taken as true*, would *permit* the conclusion that there was a nondiscriminatory reason for the adverse action.'").  The inference of intentional discrimination based on Williams' *prima facie* case stands, and he has no burden to point to evidence that raises a genuine issue of material fact on the issue of pretext and/or whether race was a motivating factor in Defendant's hiring decision.  *See St. Mary's Honor Ctr.*, 509 U.S. at 508 (plaintiff's burden to show pretext is conditional; it arises only if the defendant carries its burden of production regarding a legitimate non-discriminatory reason for its employment decision); *Burdine*, 450 U.S. at 255-56 (same).

Defendant's motion for summary judgment on Williams' claim for failure to hire him as a regular employee between 2006 and 2008 should be denied.

## VI.  MOTION FOR LEAVE TO FILE SUR-REPLY

Plaintiffs move for leave to file a sur-reply.  (*See* doc. 134.)  The local rules do not allow sur-replies without leave of court.  N.D. TEX. CIV. R. 7.1(f); *see also  Underwood v. E. Tex. State Univ.*, No. 3:96-CV-2739-G, 1998 WL 223695, at *1 (N.D. Tex. Apr. 28, 1998).  A sur-reply is appropriate only when "the movant raises new legal theories or attempts to present new evidence at the reply stage."  *Murray v. TXU Corp.*, No. 3:03-CV-0888-P, 2005 WL 1313412, at *4 (N.D. Tex. May 27,

2005).  Plaintiffs fail to identify any new legal theories or new evidence raised in Defendant's reply

brief.  The "new" argument to which Plaintiffs allude appeared in Defendant's initial brief and was

fully addressed in Plaintiffs' response brief in opposition to the motion for summary judgment.  The

motion for leave to file a sur-reply is therefore  **DENIED**.

## VII.  RECOMMENDATION

Defendant's motion for summary judgment should be **GRANTED** as to Plaintiff Randal

Jones' associational hostile work environment claim and any claim based on a failure to hire

Plaintiff George Williams as a regular employee between 1996 and October 19, 2001.  The

remainder of Defendant's motion should be **DENIED**.

**SO RECOMMENDED** on this 17th day of December, 2012.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R.CIV. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Serve. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE